MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ACADIA L. SENESE (CABN 251287)
W.S. WILSON LEUNG (CABN 190939)
Assistant United States Attorneys

   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   E-Mail: acadia.senese@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> ) <br>   v. ) <br> ) <br> MICHAEL ORTIZ, SR., ) <br>    a/k/a "Blackie" ) <br> ) <br>    Defendant. ) <br>_____ ) | No. CR 12-0119 SI <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Date:  September 27, 2013 <br> Time:  11:00 a.m. |

**I. Introduction**

   The defendant, Michael Ortiz, Sr., pled guilty pursuant to a Rule(c)(1)(A) and Rule(c)(1)(B) plea agreement to Counts Nineteen, Twenty, Twenty-One, and Twenty-Two of the Second Superseding Indictment. This Court set September 27, 2013, at 11:00 a.m. as the date for judgment and sentencing.

   The government submits the following sentencing memorandum in order to advise the Court of the government's Guidelines calculation, its single objection to the final presentence report ("PSR") with respect to the defendant's offense level, and its sentencing recommendation.

   For the reasons set forth below, the government respectfully recommends that the

defendant be sentenced to a total of 70 months imprisonment, followed by a term of three years of supervised release with special conditions, and a $400 special assessment.

## II. Offense Conduct

The defendant was an accessory after the fact to three racketeering murders committed by his son, Joseph Ortiz and he conspired with others to obstruct the investigation of those murders. The defendant's conduct spanned a lengthy period of time from December 2010 to the day of his arrest in May 2012. The defendant participated in the scheme to dispose of evidence, hid his son in Mexico so that law enforcement officers could not arrest him, helped hide a critical witness from law enforcement, and otherwise orchestrated a larger conspiracy to obstruct justice.

Joseph Ortiz murdered three people on December 22, 2010. That same night, Michael Ortiz, Sr. helped his son, and others with whom he agreed to obstruct the investigation, to dispose of the firearms used in the shooting (which still have not been recovered), wipe fingerprints from the vehicle used in the shooting, and drive Joseph Ortiz and his girlfriend to Arizona during the early morning hours of December 23, 2010. Joseph Ortiz and his girlfriend eventually left Arizona and went to Mexico. While they were in Mexico, the defendant sent money to Joseph Ortiz and asked other people to send him money as well so that they could remain in Mexico and avoid prosecution. Indeed, the defendant, along with others, sent Joseph Ortiz over $30,000 while he was in Mexico. The defendant even sold some real estate to fund his son's flight from justice.

The defendant remained in regular contact with Joseph Ortiz while he was in Mexico and advised Joseph Ortiz not to talk to law enforcement, counseled him generally on how to avoid arrest, and speculated that Joseph Ortiz' girlfriend may be cooperating with law enforcement. In fact, as part of the lengthy conspiracy to obstruct justice, the defendant arranged, alongside his co-conspirators, to return Joseph Ortiz' girlfriend back to Mexico after she had briefly come back to the United States so that she would not speak with law enforcement officers. The defendant had no intention of ever surrendering his son - or himself - to law enforcement.

## III. Guidelines Calculation

The parties have set forth their understanding of the applicable Guidelines calculation in

the written plea agreement.  *See* Plea Agt. ¶ 7(a) - (d).  The parties have not agreed upon a Criminal History Category.  It is the government's position that the defendant's adjusted offense level is 27, he falls within Criminal History Category III, and his resulting Guidelines range is 87-108 months imprisonment.

      A.     Offense Level

The Probation Department disagrees with the parties' calculation of the defendant's offense level.  *See* PSR ¶¶ 78-87.  Specifically, the government does not believe that the defendant qualifies for a four level increased adjustment for his role in the offense pursuant to U.S.S.G. § 3B1.1(c).  PSR ¶ 82.  While the defendant's conduct may have been more severe relative to some of his co-defendants, including Betty Ortiz, Tanya Rodriguez, and Louis Rodriguez who each resolved their cases through the group disposition and who are similarly situated in terms of the charged offenses, the fact that his conduct was more severe does not necessarily mean that he directed and led others for purposes of the aggravating role adjustment. The defendant did not profit from his role in the offense, he will not repeat this criminal conduct, and the severity of the defendant's participation is accounted for in the length of his prison term. (1) The aggravating role adjustment tends to focus on the individuals who stood to profit from exercising a leadership or management role in the enterprise.  U.S.S.S. § 3B1.1, background note ("person who exercise a managerial role tend to profit more from it and present a greater danger to the public").  There is no evidence that the defendant stood to profit by his conduct any more so than his co-defendants, nor is there any evidence that the defendant posed a greater danger to the community as opposed to his co-defendants on account of his participation in the conspiracy; (2) Now that the defendant's son, Joseph Ortiz, has since pled guilty and is facing multiple life terms of imprisonment at sentencing, there is little to no chance that the defendant will repeat the charged conduct, which factors against the application of the aggravating role adjustment.  *Id*.; and (3) Since the severity of the defendant's conduct relative to his co-defendants is reflected in the most lengthy recommended prison sentence of the group, the government believes that the severity of the defendant's conduct is properly accounted for independent of the application of an aggravated role adjustment.

UNITED STATES' SENTENCING MEMORANDUM
CR 12-0119 SI                                                      3

B. Criminal History

The government agrees with the Probation Department that the defendant has four criminal history points, resulting in Criminal History Category III. *See* PSR ¶¶ 100-101. The government believes that the Probation Officer properly assigned criminal history points for the defendant's prior criminal convictions and that his criminal history category is not overstated. As the Probation Officer points out, the defendant has suffered 11 prior misdemeanor convictions, only four of which are within the applicable time period and count towards the defendant's criminal history category. Moreover, the nature of the prior misdemeanor convictions militates against a departure in Criminal History Category. The prior convictions that count towards the defendant's Criminal History Category include battery on a peace officer, disorderly conduct, obstruction of a public officer, and insufficient check funds. Finally, all of the four prior misdemeanor convictions that count towards the defendant's Criminal History Category occurred within ten years of the instant offense, occurred repeatedly through the ten years, and the latest conviction occurred in October of 2006, relatively close in time to the instant offense. PSR ¶ 99. This evinces a pattern of criminal conduct that should not be discounted. Given the defendant has eleven prior convictions, and that only four of those convictions were within the ten year period of the instant offense, the Court should not depart downward to a lower Criminal History Category.

Accordingly, the defendant's resulting Guidelines calculations indicate Adjusted Offense Level 26, Criminal History Category III, and Guidelines Range 87-108 months imprisonment.

## IV. Discussion

### A. Applicable Sentencing Law

Under the current sentencing regime, the Court must sentence in accordance with the directions of 18 U.S.C. § 3553(a). Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth specific considerations, including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the defendant's need for rehabilitation; the kinds of sentences available; and the sentencing range under the Guidelines. 18 U.S.C. § 3553(a). On appellate review, a sentence is reviewed for "unreasonableness" in light of these various factors. *United States v. Booker*, 543 U.S. 220, 260-62 (2005).

Although the Supreme Court's decision in *Booker* has rendered the Sentencing Guidelines advisory, the Guidelines still remain the "starting point and initial bench-mark" for sentencing. *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (internal quotation marks and citation omitted); *see United States v. Carty*, 520 F.3d 984, 991 (9th 2008) (*en banc*); *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011). While there is no presumption of reasonableness for a Guidelines range sentence, *see Carty*, 520 F.3d at 991-992, if a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. (citing *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *see United States v. Munoz-Camarena,* 631 F.3d 1028, 1030 (9th Cir. 2011) ("A district court must start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the extent of the departure from the Guidelines sentence.").

**B.     A Sentence of 70 Months' Imprisonment is Appropriate**

Notwithstanding the Guidelines calculations set forth above, a sentence of 70 months' imprisonment is an appropriate and reasonable sentence in this case, which represents a variance from the Guidelines.

First and foremost, the defendant's conduct was nothing short of egregious. It cannot be underscored enough that obstruction of justice threatens and hinders the successful administration of justice. On the heals of a triple gang homicide, the defendant devised a plan and participated in a conspiracy that whisked his son out of the Bay Area and eventually to Mexico, destroyed evidence, prevented law enforcement from talking to a critical witness, and dissuaded others from helping law enforcement. The defendant's criminal plan was almost successful:  there is no shortage of luck that Joseph Ortiz was located in Mexico and that Joseph

UNITED STATES' SENTENCING MEMORANDUM
CR 12-0119 SI                                                5

Ortiz' girlfriend, who at one point the defendant exclaimed he would have killed, was unharmed in the aftermath of the triple murders. The ultimate damage that the defendant's conduct caused to the overall administration of justice with respect to the individuals involved in the murders, attempted murders, and racketeering conspiracy remains to be seen. It is fair say, however, that the conspiracy to obstruct justice which the government participated in had a negative and lasting impact on the government's ability to investigate and prosecute the individuals responsible for the murders.

Nonetheless, the government believes that a variance from the Guidelines is warranted in this case because the defendant accepted an early resolution of the case. The defendant spearheaded a group disposition along with his co-defendants which resulted in a global resolution for the co-conspirators who obstructed justice. The defendant's acceptance of responsibility (as evidenced by his lengthy letter to probation included in the PSR), the global resolution of the matters, and the 3553(a) factors identified in the PSR are the basis for the parties agreed upon request for a variance.

**V. Conclusion**

In full consideration of the goals of sentencing, the United States respectfully requests that the Court sentence the defendant Michael Ortiz, Sr. to a term of 70 months' imprisonment, three years of supervised release with special conditions, and a $400 special assessment.

DATED: September 19, 2013          Respectfully submitted,

                                   MELINDA HAAG
                                   United States Attorney


                                   _____/s/_____
                                   ACADIA L. SENESE
                                   Assistant United States Attorney